UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**FILED**

NOV 0 4 2011

Clerk, U S. District & Bankruptcy
Courts for the District of Columbia

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.  10-270-RJL | |
| | ) | | |
| | ) | Filed: | November 4, 2011 |
| v. | ) | | |
| | ) | Count I: | 15 U.S.C. § 1 |
| PANALPINA WORLD TRANSPORT | ) | Count II: | 15 U.S.C. § 1 |
| (HOLDING) LTD., | ) | Count III: | 15 U.S.C. § 1 |
| | ) | | |
| Defendant. | ) | | |
| | ) | | |
| | ) | | |

## PLEA AGREEMENT

The United States of America and Panalpina World Transport (Holding) Ltd.

("defendant"), a corporation organized and existing under the laws of Switzerland, hereby enter

into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal

Procedure ("Fed. R. Crim. P."). The terms of the Plea Agreement are as follows:

### RIGHTS OF DEFENDANT

1.    The defendant understands its rights:

(a)    to be represented by an attorney;

(b)    to be charged by Indictment;

(c)    as a corporation organized and existing under the laws of Switzerland, to

decline to accept service of the Summons in this case, and to contest the jurisdiction of

the United States to prosecute this case against it in the United States District Court for

the District of Columbia;

(d)    to plead not guilty to any criminal charge brought against it;

(e)     to have a trial by jury, at which it would be presumed not guilty of the offenses charged and the United States would have to prove every essential element of the charged offenses beyond a reasonable doubt for it to be found guilty;

(f)     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(g)     to appeal its conviction if it is found guilty; and

(h)     to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.     The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above, including all jurisdictional defenses to the prosecution of this case, and agrees voluntarily to consent to the jurisdiction of the United States to prosecute this case against it in the United States District Court for the District of Columbia. The defendant also agrees to waive any objection or defense it may have to the prosecution of the charged offenses in the United States District Court for the District of Columbia based on venue. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the Recommended Sentence in Paragraph 9 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c). Nothing in this paragraph, however, shall act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack

respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The

defendant agrees that there is currently no known evidence of ineffective assistance of counsel or

prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment

and plead guilty at arraignment to a three-count Information to be filed in the United States

District Court for the District of Columbia.

       3.     As used in this Agreement, except as further defined below, the term

"international air freight forwarding services" means the following services and activities:

(1) receiving, packaging and preparing cargo freight destined for air shipment to or from the

United States; (2) delivery, transportation and storage of the cargo incidental to an air shipment

to or from the United States, such as ground transportation services to an airport at which the

defendant offers international air freight shipment services and warehousing prior to international

shipment; (3) contracting for air shipment of the cargo freight to or from the United States; and

(4) preparation of documents to accompany a cargo freight air shipment to or from the United

States. The term "international air freight forwarding services," as used herein, does not include

either of the following services: (a) ocean or ground freight forwarding services that are not

incidental to an international air freight shipment or (b) express delivery services. Count One of

the Information will charge the defendant with participating in a conspiracy among freight

forwarders to suppress and eliminate competition by agreeing to impose an Air Automated

Manifest System charge ("AAMS fee") on customers that purchased international air freight

forwarding services from the defendant related to the shipment of cargo by air into the United

States, beginning in or about March 2003 and continuing until in or about October 2007. Count

Two of the Information will charge the defendant with participating in a conspiracy among

3

freight forwarders to suppress and eliminate competition by agreeing to require customers that

purchased international air freight forwarding services from the defendant related to the shipment

of cargo by air from China to the United States either to accept and pay charges in the local

currency (renminbi) or, alternatively, to accept and pay a currency adjustment factor ("CAF") at

the initial level of 2.1 percent of total charges to account for a change in the exchange rate as a

result of the re-valuing of the renminbi, beginning in or about July 2005 and continuing until in

or about June 2006. Count Three of the Information will charge the defendant with participating

in a conspiracy among freight forwarders to suppress and eliminate competition by agreeing to

impose a peak season surcharge ("PSS") on customers that purchased international air freight

forwarding services from the defendant related to the shipment of cargo by air from Hong Kong

to the United States, beginning in or about August 2005 and continuing until in or about

December 2007. Each count will charge a violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

4.     The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to

the criminal charges described in Paragraph 3 above and will make a factual admission of guilt to

the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 5 below.

**FACTUAL BASIS FOR OFFENSES CHARGED**

5.     Had this case gone to trial, the United States would have presented evidence

sufficient to prove the following facts:

(a)     At all times relevant to the offenses charged in the Information, the

defendant acted through its employees, its subsidiaries and their employees, including

high-level personnel.

(b)     As to Count One of the Information:

(i)     The "relevant period" is that period from in or about March 2003 to in or about October 2007. During the relevant period, the defendant was a corporation organized and existing under the laws of Switzerland, with its headquarters in Basel, Switzerland. During the relevant period, the defendant provided international air freight forwarding services in the United States and elsewhere and employed 5000 or more individuals.

(ii)     During the relevant period, the defendant participated in a conspiracy among major freight forwarders, the primary purpose of which was to initiate and impose a charge for AAMS service on customers that purchased international air freight forwarding services from the defendant related to the shipment of cargo by air to the United States. In furtherance of the conspiracy, the defendant engaged in discussions and attended meetings with representatives of other freight forwarders. During those discussions and meetings, the freight forwarders, including the defendant, agreed to impose an AAMS fee on shipments to the United States and coordinated on the level of that charge.

(iii)     During the relevant period, the international air freight forwarding services provided by the conspirator firms, including the defendant, as well as payments for the AAMS fee, moved in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with their international air freight forwarding services that were the subject of this

conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

(iv)    Acts in furtherance of this conspiracy were carried out within the five years preceding the filing of this Plea Agreement.

(c)    As to Count Two of the Information:

(i)    The "relevant period" is that period from in or about July 2005 to in or about June 2006.  During the relevant period, the defendant was a corporation organized and existing under the laws of Switzerland, with its headquarters in Basel, Switzerland.  During the relevant period, the defendant provided international air freight forwarding services in the United States and elsewhere, and employed 5000 or more individuals.

(ii)    During the relevant period, the defendant participated in a conspiracy among major freight forwarders, the primary purpose of which was to impose a charge on international air freight forwarding services related to the shipment of cargo by air from China to the United States to compensate for a change in the value ratio of the U.S. dollar to the Chinese renminbi.  In furtherance of the conspiracy, the defendant engaged in discussions and attended meetings with representatives of other freight forwarders.  During those discussions and meetings, the freight forwarders, including the defendant, agreed to demand that customers for international air freight forwarding services originating in China and destined for the United States whose contracts were denominated in U.S. dollars either pay an amount in excess of the agreed-upon

charge, initially 2.1 percent, as a CAF, or, alternatively, that they pay for such services in the local Chinese currency.

   (iii) During the relevant period, the international air freight forwarding services were provided by the conspirator firms, including the defendant, in a continuous and uninterrupted flow of foreign and interstate commerce into the United States.  In addition, the cargo and payments, including the CAF, for which the conspirator firms, including the defendant, provided international air freight forwarding services moved in interstate and foreign commerce.  The business activities of the defendant and its co-conspirators in connection with their international air freight forwarding services that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

   (iv) Acts in furtherance of this conspiracy were carried out within the five years preceding the filing of this Plea Agreement.

(d) As to Count Three of the Information:

   (i) The "relevant period" is that period from in or about August 2005 to in or about December 2007.  During the relevant period, the defendant was a corporation organized and existing under the laws of Switzerland, with its headquarters in Basel, Switzerland.  During the relevant period, the defendant provided international air freight forwarding services in the United States and elsewhere, and employed 5000 or more individuals.

(ii)     During the relevant period, the defendant participated in a conspiracy among major freight forwarders, the primary purpose of which was to impose a PSS on international air freight forwarding services related to the shipment of cargo by air from Hong Kong to the United States during "peak season," a period broadly defined as the busy period for air cargo shipments precipitated by the Christmas holiday shopping season in the United States.  In furtherance of the conspiracy, the defendant engaged in discussions and attended meetings with representatives of other freight forwarders.  During those discussions and meetings, the freight forwarders, including the defendant, agreed on the initiation and termination dates of the PSS and the approximate level of the charge.

(iii)    During the relevant period, the international air freight forwarding services were provided by the conspirator firms, including the defendant, in a continuous and uninterrupted flow of foreign and interstate commerce into the United States.  In addition, the cargo and payments, including the PSS, for which the conspirator firms, including the defendant, provided international air freight forwarding services moved in interstate and foreign commerce.  The business activities of the defendant and its co-conspirators in connection with their international air freight forwarding services that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

8

(iv)    Acts in furtherance of this conspiracy were carried out within the five years preceding the filing of this Plea Agreement.

## POSSIBLE MAXIMUM SENTENCE

6.    The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for each violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)    $100 million (15 U.S.C. § 1);

(b)    twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)    twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7.    In addition, the defendant understands that for each count:

(a)    pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b)    pursuant to §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

(c)    pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction.

## SENTENCING GUIDELINES

8.      The defendant understands that the Sentencing Guidelines are advisory, not

mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing

along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing

sentence.  The defendant understands that the Guidelines determinations will be made by the

Court by a preponderance-of-the-evidence standard.  The defendant understands that although the

Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its

sentence must be reasonable, based upon consideration of all relevant sentencing factors set forth

in 18 U.S.C. § 3553(a).  Pursuant to U.S.S.G. §1B1.8, the United States agrees that self-

incriminating information that the defendant provides to the United States pursuant to this Plea

Agreement will not be used to increase the volume of affected commerce attributable to the

defendant or in determining the defendant's applicable Guidelines range, except to the extent

provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

9.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant

agree that the appropriate disposition of this case is, and agree to recommend jointly that the

Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of

**$2,660,256** for Count One, **$5,954,135** for Count Two and **$3,333,453** for Count Three, for a

total of **$11,947,845**, payable in full before the fifteenth (15th) day after the date of judgment

("the Recommended Sentence"). The parties agree that there exists no aggravating or mitigating

circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S.

Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant

to U.S.S.G. §5K2.0.  The parties agree not to seek or support any sentence outside of the

Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea

Agreement.  The parties further agree that the Recommended Sentence set forth in this Plea

Agreement is reasonable.

       (a)     The defendant understands that the Court will order it to pay a $400

special assessment per count, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any

fine imposed.

       (b)     Both parties will recommend that no term of probation be imposed, but the

defendant understands that the Court's denial of this request will not void this Plea

Agreement.

       (c)     The United States and the defendant jointly submit that this Plea

Agreement, together with the record that will be created by the United States and the

defendant at the plea and sentencing hearings, and the further disclosure described in

Paragraph 10 below, will provide sufficient information concerning the defendant, the

crime charged in this case, and the defendant's role in the crime to enable the meaningful

exercise of sentencing authority by the Court under 18 U.S.C. § 3553.  The United States

and the defendant agree to request jointly that the Court accept the defendant's guilty

pleas and impose sentence on an expedited schedule as early as the date of arraignment,

based upon the record provided by the defendant and the United States, under the

provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii) and U.S.S.G. §6A1.1.  The Court's denial

of the request to impose sentence on an expedited schedule will not void this

Plea Agreement.

10.     Subject to the ongoing, full and truthful cooperation of the defendant described in Paragraph 13 of this Plea Agreement, and before sentencing in the case, the United States will fully advise the Court and the Probation Office of the fact, manner and extent of the defendant's cooperation, its commitment to prospective cooperation with the United States' investigations and prosecutions, all material facts relating to the defendant's involvement in the charged offenses and all other relevant conduct.

11.     The United States and the defendant understand that the Court retains complete discretion to accept or reject the Recommended Sentence provided for in Paragraph 9 of this Plea Agreement.

(a)     If the Court does not accept the Recommended Sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 11(b) below, shall be rendered void.

(b)     If the Court does not accept the Recommended Sentence, the defendant will be free to withdraw its guilty pleas (Fed. R. Crim. P. 11(c)(5) and (d)).  If the defendant withdraws its pleas of guilty, this Plea Agreement, the guilty pleas, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty pleas or this Plea Agreement or made in the course of plea discussions with an attorney for the government shall not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Federal Rule of Evidence 410.  In addition, the defendant agrees that, if it withdraws its guilty pleas pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 15 of this Plea Agreement shall be tolled for the period between

12

the date of the signing of the Plea Agreement and the date the defendant withdrew its guilty pleas or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

12.     In light of the availability of civil causes of actions, which potentially provide for a recovery of a multiple of actual damages, the United States agrees that it will not seek a restitution order for the offenses charged in the Information.

**DEFENDANT'S COOPERATION**

13.     The defendant and its subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving (a) the sale of international air freight forwarding services, (b) to the limited extent specified herein, the sale of international ocean freight forwarding services insofar as the object of any antitrust conspiracy was to impose a charge related to a mandate of the U.S. Bureau of Customs and Border Protection that, beginning in or about December 2002, it be notified electronically of the contents and certain other information regarding cargo destined for the United States prior to the ship's departure from a foreign port and (c) to the limited extent specified herein, the sale of international ocean freight forwarding services insofar as the object of any antitrust conspiracy was to impose a charge related to a mandate of Her Majesty's Revenue & Customs (U.K.) ("HMR&C") that, beginning in or about October 2002, HMR&C be notified electronically of the contents and certain other information regarding cargo destined for the United States and other non-European Community countries prior to the ship's departure from the United Kingdom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States

is a party (together "Federal Proceeding"). The ongoing, full and truthful cooperation of the defendant shall include, but not be limited to:

(a)      producing to the United States all non-privileged documents, information and other materials wherever located, in the possession, custody or control of the defendant or its subsidiaries, requested by the United States in connection with any Federal Proceeding;

(b)      using their best efforts to secure the ongoing, full and truthful cooperation, as defined in Paragraph 14 of this Plea Agreement, of the current directors, officers and employees of the defendant and its subsidiaries as may be requested by the United States, including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial and other judicial proceedings in connection with any Federal Proceeding, with the exception of Robert Peter Frei, Markus Alexander Mücke and Tang Yuk Yi, a/k/a Ann Tang.

14.      The ongoing, full and truthful cooperation of each person described in Paragraph 13(b) above, with the exceptions noted, will be subject to the procedures and protections of this paragraph, and shall include, but not be limited to:

(a)      producing in the United States and at other mutually agreed-upon locations all non-privileged documents, including claimed personal documents and other materials, wherever located, requested by attorneys and agents of the United States;

(b)     making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements (18 U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(d)     otherwise voluntarily providing the United States with any non-privileged material or information not requested in (a) - (c) of this paragraph that he or she may have that is related to any Federal Proceeding;

(e)     when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial and other judicial proceedings in the United States fully, truthfully and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making of false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402) and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)     agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 16(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 16(a) shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under the Plea Agreement.

## GOVERNMENT'S AGREEMENT

15.     Upon acceptance of the guilty pleas called for by this Plea Agreement and the

imposition of the Recommended Sentence, and subject to the cooperation requirements of

Paragraph 13 of this Plea Agreement, the United States agrees that it will not bring further

criminal charges against the defendant or any of its subsidiaries for any act or offense committed

before the date of this Plea Agreement that was undertaken in furtherance of an antitrust

conspiracy involving (a) the sale of international air freight forwarding services, (b) to the limited

extent specified herein, the sale of international ocean freight forwarding services insofar as the

object of any antitrust conspiracy was to impose a charge related to a mandate of the U.S. Bureau

of Customs and Border Protection that, beginning in or about December 2002, it be notified

electronically of the contents and certain other information regarding cargo destined for the

United States prior to the ship's departure from a foreign port and (c) to the limited extent

specified herein, the sale of international ocean freight forwarding services insofar as the object

of any antitrust conspiracy was to impose a charge related to a mandate of HMR&C that,

beginning in or about October 2002, HMR&C be notified electronically of the contents and

certain other information regarding cargo destined for the United States and other non-European

Community countries prior to the ship's departure from the United Kingdom.  The

nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation

of the federal tax or securities laws or to any crime of violence.

16.     The United States agrees to the following:

(a)     Upon the Court's acceptance of the guilty pleas called for by this Plea

Agreement and the imposition of the Recommended Sentence and subject to the

16

exceptions noted in Paragraph 16(c) below, the United States will not bring criminal charges against any current director, officer or employee of the defendant or defendant's subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer or employee of the defendant or any of its subsidiaries that was undertaken in furtherance of an antitrust conspiracy involving (a) the sale of international air freight forwarding services, (b) to the limited extent specified herein, the sale of international ocean freight forwarding services insofar as the object of any antitrust conspiracy was to impose a charge related to a mandate of the U.S. Bureau of Customs and Border Protection that, beginning in or about December 2002, it be notified electronically of the contents and certain other information regarding cargo destined for the United States prior to the ship's departure from a foreign port and (c) to the limited extent specified herein, the sale of international ocean freight forwarding services insofar as the object of any antitrust conspiracy was to impose a charge related to a mandate of HMR&C that, beginning in or about October 2002, HMR&C be notified electronically of the contents and certain other information regarding cargo destined for the United States and other non-European Community countries prior to the ship's departure from the United Kingdom (together "Relevant Offense"), with the exception that the protections granted in this paragraph shall not apply to Robert Peter Frei, Markus Alexander Mücke and Tang Yuk Yi, a/k/a Ann Tang;

(b)     Should the United States determine that any current director, officer or employee of the defendant or any of its subsidiaries may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the

17

terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

(c)     If any person requested to provide cooperation under Paragraph 16(b) fails to comply with his or her obligations under Paragraph 14, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void;

(d)     Except as provided in Paragraph 16(e), information provided by a person described in Paragraph 16(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury (18 U.S.C. § 1621), making a false statement or declaration (18 U.S.C. §§ 1001, 1623) or obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 14 of this Plea Agreement, the agreement in Paragraph 16(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case shall be rendered void;

(f)     The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws or to any crime of violence; and

18

(g)     Documents provided under Paragraphs 13(a) and 14(a) shall be deemed responsive to outstanding grand jury subpoenas issued to the defendant.

17.     The United States agrees that when any person travels to the United States for interviews, grand jury appearances or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention or service of process, or to prevent such person from departing the United States.  This paragraph does not apply to an individual's commission of perjury (18 U.S.C. § 1621), making false statements or declarations (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*) or contempt (18 U.S.C. §§ 401-402) in connection with any testimony or information provided or requested in any Federal Proceeding.

18.     The defendant understands that it may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take.  However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner and extent of the cooperation of the defendant as a matter for that agency to consider before determining what administrative action, if any, to take.

## REPRESENTATION BY COUNSEL

19.     The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation.  The defendant has thoroughly reviewed

this Plea Agreement and acknowledges that counsel has advised it of the nature of the charges,

any possible defenses to the charges and the nature and range of possible sentences.

## VOLUNTARY PLEA

20.     The defendant's decision to enter into this Plea Agreement and to tender pleas of

guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises

or representations other than the representations contained in this Plea Agreement.  The United

States has made no promises or representations to the defendant as to whether the Court will

accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

21.     The defendant agrees that, should the United States determine in good faith,

during the period that any Federal Proceeding is pending, that the defendant or any of its

subsidiaries has failed to provide full and truthful cooperation, as described in Paragraph 13 of

this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United

States will notify counsel for the defendant in writing by personal or overnight delivery or

facsimile transmission and may also notify counsel by telephone of its intention to void any of its

obligations under this Plea Agreement (except its obligations under this paragraph), and the

defendant and its subsidiaries shall be subject to prosecution for any federal crime of which the

United States has knowledge including, but not limited to, the substantive offenses relating to the

investigation resulting in this Plea Agreement.   The defendant and its subsidiaries agree that, in

the event that the United States is released from its obligations under this Plea Agreement and

brings criminal charges against the defendant or its subsidiaries for any offense referred to in

Paragraph 15 of this Plea Agreement, the statute of limitations period for such offenses shall be

tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

22.     The defendant understands and agrees that in any further prosecution of it resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendant's or its subsidiaries' violation of the Plea Agreement, any documents, statements, information, testimony or evidence provided by it, its subsidiaries, or any current directors, officers or employees of it or any subsidiary to attorneys or agents of the United States, federal grand juries or courts, and any leads derived therefrom, may be used against it and its subsidiaries in any such further prosecution. In addition, the defendant and its subsidiaries unconditionally waive their right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Federal Rule of Evidence 410.

## ENTIRETY OF AGREEMENT

23.     This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case.  This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

24.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

25.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

26.    A facsimile signature shall be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED: 27 Sept. 2010

BY: _____                   BY: _____
Stephan Gusmann                                    Hays Gorey, Jr.
Head of Government Affairs                          Mary Strimel
Panalpina World Transport                           Ryan Danks
(Holding) Ltd.                                      Jessica Lefort
                                                    William M. Martin
                                                    Attorneys
                                                    United States Department of Justice
BY: _____                        Antitrust Division
Douglas M. Tween, Esq.                              450 Fifth Street, NW
Brian F. Burke, Esq.                                Suite 11300
John A. Basinger, Esq.                              Washington, D.C. 20530
Baker & McKenzie LLP                                Tel.: (202) 307-0000
1114 Avenue of the Americas
New York, NY 10036
(212) 626-4355
Counsel for Panalpina World
   Transport (Holding) Ltd.

23

**PANALPINA WORLD TRANSPORT (HOLDING) LTD.**
**CERTIFICATE OF CORPORATE RESOLUTIONS**

**Resolutions of the Board of Directors Meeting of**
**PANALPINA WORLD TRANSPORT (HOLDING) LTD.**
**held on March 3, 2011**
**in Basel, Switzerland**

I, Dr. Rudolf W. Hug, do hereby certify that I am the Chairman of the Board of Directors for Panalpina World Transport (Holding) Ltd. ("PWT" or the "Company), a company incorporated in Switzerland, and that the following is an accurate excerpt of certain resolutions unanimously adopted by the Board of Directors of the Company at a meeting held on March 3, 2011, at which a quorum was present.

WHEREAS, Panalpina World Transport (Holding) Ltd. has been engaged in discussions with the United States Department of Justice, Antitrust Division ("Antitrust Division") in connection with issues relating to participation in conspiracies among freight forwarders to charge certain surcharges in connection with the sale of international air freight forwarding services and the advance manifest system surcharge on the sale of international ocean freight forwarding services;

WHEREAS, in order to resolve the above, it is proposed that the Company enter into a Plea Agreement (the "Plea Agreement") with the Antitrust Division and the key terms of the Plea Agreement have been distributed to the members of the Board;

WHEREAS, the Plea Agreement contemplates:

PWT pleading guilty to certain crimes pursuant to the Plea Agreement with the Antitrust Division which, among other things: (a) includes the filing of an Information in the United States District Court for the District of Columbia charging the Company with three counts of conspiring to violate the Sherman Antitrust Act; (b) requires the Company to waive the filing of an indictment on such charges; (c) requires the Company to enter a plea of guilty as to all charges in the Information; (d) requires the Company to abide by the terms of the Plea Agreement, including cooperating with the Antitrust Division in the prosecution of this case and current investigation of violations of federal antitrust and related criminal laws; (e) requires the Company to pay a monetary penalty of US$11,947,845, which shall be paid to the Clerk of the Court for the District of Columbia; and (f) releases the Company from any other prosecution for: (1) all conduct related to the sale of international air freight forwarding services; and (2) conduct related to the imposition of an advance manifest system surcharge on the sale of international ocean freight forwarding services;

WHEREAS, the Company's external legal counsel, Baker & McKenzie LLP, together with the Company's General Counsel, have advised the Board of Directors of the Company's rights, possible defenses, relevant provisions of the United States Sentencing Guidelines, and the consequences of entering into such an agreement with the Antitrust Division;

NOW, THEREFORE, BE IT RESOLVED, that the following actions be and hereby are authorized or, as the case may be, ratified:

1. PWT is authorized to (a) consent to the filing in the United States District Court for the District of Columbia of an Information charging it with three counts of conspiring to violate the Sherman Antitrust Act; (b) waive indictment on such charges; (c) consent to the entry of pleas of guilty; (d) agree to abide by all of the terms of the Plea Agreement; and (e) pay a monetary penalty of US$11,947,845 to the Clerk of the United States District Court for the District of Columbia;

2. Any of the executive officers of the Company, or Mr. Robert Ernest, the Area Head of Legal Services and SVP of the Company's wholly owned US subsidiary, Panalpina Inc., and Baker & McKenzie LLP, as legal counsel to the Company, are authorized to negotiate, approve, accept, execute and deliver the Plea Agreement in the form approved by the Board on September 21, 2010 with such revisions thereto as any such officer, or Mr. Ernest, and Baker & McKenzie shall approve;

3. Any of the executive officers of the Company, or Mr. Ernest, and Baker & McKenzie LLP, as legal counsel to the Company, are authorized to take any and all actions as may be necessary or appropriate, including but not limited to approving the forms, terms, or provisions of any agreement or other documents to carry out and effectuate the purpose and intent of the foregoing resolutions; and

4. The actions of any of the executive officers of the Company, or Mr. Ernest, and Baker & McKenzie, as legal counsel to the Company, which actions would have been authorized by the foregoing resolutions, are hereby ratified, confirmed, approved, and adopted as actions on behalf of the Company.

This certificate replaces the former certificate dated September 21, 2010.

IN WITNESS WHEREOF, I have executed this Certificate on March 3, 2011.

_____
Dr. Rudolf W. Hug
Chairman of the Board of Directors